I'm pleased to report my name is Andrew Hall. I have the pleasure of representing the DiFederico family. This case involves a dismissal under form nonconvenience of a wrongful death action filed against Marriott by American citizens, residents of Virginia at the time, in Maryland against Marriott, whose home headquarters are in Maryland. The gravamen of the complaint was that the planning that Marriott did with regard to the anticipation of terrorist bombings and their control over their franchise system in that subject matter was deficient. And as a proximate result of that deficiency, Mr. DiFederico lost his life on September 20th, 2008, in the bombing of the Marriott in Islamabad, Pakistan. The trial court's decision dismissing this case and sending it back to Pakistan lacks the language that reflects the heavy presumption in favor of convenience of an American citizen suing an American citizen. And as a result, it goes on extensively, starting with referring to a different issue, which is the simple presumption of a normal plaintiff in selecting a court without the heavy presumption distinction. That heavy presumption distinction brings with it a required analysis that would require the court to determine that the oppressiveness and vexation to Marriott by litigating is out of all proportion to the plaintiff's convenience. You find nowhere in the trial judge's decision any reference to that standard. And so this court, I think, is in the identical circumstance as the 11th Circuit when it dealt with this very similar subject, not in the context of bombing, but rather in the context of an accident occurring at the Los Suenos Marriott Ocean and Gulf Resort in Mexico, in which the court said that the language that is required in order to do the analysis doesn't show any recognition of the extreme circumstances or manifest extreme injustice that would merit denying a US citizen access to its courts. And then we go into the exact analysis the court did, and there are other places in the opinion beyond that fundamental departure from law by not even referring to the correct standard. And let's just deal with a couple of them. We pointed out to the court that there was a non-waivable statute of limitations that made the Pakistan form unavailable. The court's response to that was the decision not to sue in Pakistan was essentially a strategic one. And as a result, it would be wrong to allow a plaintiff to bootstrap themselves into a situation of allowing a statute to expire. At the time the district court issued its order, had the statute of limitation run in Pakistan? I believe it had, yes, sir. Are you sure of that? Well, we looked at the number of years, and based upon the language of the statute, it had sunsetted, yes, sir. But it probably had not run at the time the complaint was filed. That's probably true. All right, the issue of statute of limitations and Marriott's willingness to submit to the jurisdiction, that issue didn't develop, however, until a point in time after the statute expired. So it's a more nuanced point, I think. But regardless, one of the questions then becomes a further question of was there a practical barrier to Pakistan that made that form unavailable? The practical barrier becomes terribly important because it is almost as if the judiciary is a government separate apart from the executive in this case. The State Department issues warnings to American citizens abroad. The warnings the State Department issues basically recognizes a number of things that are almost incontrovertible. Over the last four years, prior to the filing, there were over 11,000 terrorist attacks in Pakistan. There were over 1,000 terrorist attacks within about a year of 2011. The State Department recognized that and issued warnings saying that in any place where Westerners or Americans congregate, Americans should avoid going, period, even to the point of declaring certain locations off limits to U.S. personnel. Now, one of the things that we need to remember is who was Mr. DeFrederico? He wasn't a businessman who voluntarily entered Pakistan in order to seek commercial activity in that nation, nor was he a tourist. Rather, he was an employee of the United States State Department. He was assigned there by our government as part of his official responsibilities. He was there doing what he was obliged to do to protect the interests of this government. And he was staying in an American-branded hotel that was part of what he is directed to do. So he's there under unusual circumstances. He loses his life in a bombing, the third bombing of this hotel in a relatively short period of time. The bombing risk is so extreme that Marriott announces that it reserves all of the aspects regarding terrorist avoidance and bombing and what to do in those circumstances to itself out of its headquarters in Maryland. In that context, when we moved into, is there a real form available? The question, is there a real form available when all of the witnesses would essentially be having to do exactly what the State Department says you should not do at the risk and peril of your life? So the question is, does the analysis of available form limit itself just to the cause of action? And is that burden low, like the trial court said, only because it's a legal analysis? Or do you consider, in that context, as an additional factor, whether the very risk of being at that court is a threat to your safety and life? I think the latter has to be the standard. It's a matter of first impression for you. And it doesn't make any sense that we would basically say that the price to litigate is one's own life. That seems to me the type of unavailability that that rule should contemplate. But moving then into the private factors, the court was obliged to recognize and measure the relative convenience between the parties, understanding that at the end of the analysis was, had to show that there would be an extreme injustice to Marriott, not to tipping of the scales, not a heavy burden, but rather extreme so far that it would warrant essentially almost a minor injustice to the client. That analysis didn't occur, that standard didn't occur in the opinion at all. In going through the analysis, for example, there were a number of factors relative to the case. For example, the court referred to the investigation of the bombing itself. They said that's an on-the-ground type of thing. But this case involved the planning, advanced planning to avoid that circumstance, and the fires and the aftermath of a bombing that are normally attended to a bombing that anybody familiar with that type of circumstance would anticipate. All of that planning, every bit of it, from the analysis of the hotel, its plans, etc., exists at the Marriott offices in Maryland. The people that did it were in Maryland. The court recognizes that and says that's so, but I'm going to now weigh the number of people that were involved in the aftermath, ignoring the fact that most of them are dead, because the people that were at the scene in the vicinity of the bombing died that day. And they say, well, we're just going to weigh those two. That's not the type of weighing to demonstrate unusually extreme circumstances. We have two bodies of evidence that exist, one in Maryland, justifying retention, one in Pakistan. So essentially, what we're saying is, which controls over the other? Well, the analysis should have reached the conclusion in order to transfer that there was a manifest extreme injustice that warrants the deprivation to the United States citizens of access to the courtrooms. And it didn't do that. That language is not in the opinion, can't be found. So as a result, that didn't happen. Then we get to the next area, which is to me just almost, we talked about economic resources. Now there, the challenge is fairly interesting, because it's measuring the economic resources of a widow and her children against the economic resources of Marriott. You don't find that in the opinion, although cases suggest that that is the appropriate analysis. What they do is they talk about the expense of translating documents into Urdu, ignoring the fact that the official language of Pakistan is English. There is no actual showing of the number of documents that would have to be transferred in Urdu, nor is there an analysis of the number of documents that are in English that are located at Marriott offices in Maryland that would be subject to the reverse circumstance. I'm sorry, Mr. Hall. Can we get back to the statute of limitations question? I need to understand why it is in response to Judge Hamilton's question, you said that at the time you filed the complaint, the Pakistani statute of limitations had probably not yet run. Let me read it to you. Let me just go right to it, if I may, for one second, because I think it's better. Matt, which tape is it? Pardon? 255. I'm sorry, I had it wrong. It expires one year from the date of the death of the person killed. That would be the death occurred. September 8, 2008, so the Pakistani statute of limitations would have run September 8, 2009. Right, and we filed on June 2, 2011. So it was over, and I apologize for that mistake. So we come down to, in dealing with the issues, essentially that the trial judge got caught up, we believe, in an analysis of things about that really didn't speak to the main issue because they were almost equal, and the trial judge ultimately ignored evidence that this is exclusively with the United States, which is the entire question of damages. Every bit of damage evidence is the United States, doesn't transport to Pakistan, and it's ultimately concluded by saying, the trial judge says, well, you would have a right to appear in a Pakistani court. Everything is excused because the plaintiff never needs to go to Pakistan, ignoring the fact that a civil lawyer always has the right to appear. So, thank you. Please, the court. My name is Paul Leary. I represent Appelli Marriott International, Inc. I'd like to spend the majority of my 20 minutes focusing on what I believe are the two main arguments that the appellant has raised. This alleged lack of deference by the trial court with Judge Titus in not applying the correct level of deference to the choice of venue. Did he even discuss it? Absolutely. As a matter of fact, I'll read from his opinion. You'll see it's very clear from his opinion as to the level of deference that he does provide, and I'll get to that in a moment. And secondly, I want to address the fear factor, which is the second part of their analysis where they claim that the court, again, abused its discretion by not properly considering the appellant's fear of going to an alternative forum. I would also like to address a peripheral argument that's been raised, the statute of limitations, in the briefing at the trial court, at the district court level. The fourth district here has found that appropriate to refuse to address an argument that's raised for the first time on appeal. And the statute of limitations was really raised for the first time on appeal. Isn't it the burden of the moving party, which is Marriott, to show that the alternative forum is available? Absolutely. Okay. And how has Marriott met its burden to show that Pakistan is available when the statute of limitations had run? Sure. Well, first of all, it's not a heavy burden to show an alternative forum is available. The Tang Court, the Supreme Court case in Piper, have found it's not a heavy burden. You will then only have to show that the alternative forum, the parties can come before it, and that gets to the statute of limitations argument, and that only the most perilous obstacles that would prevent any type of remedy would be inadequate. So to address your point now, before I get back into it, the statute of limitations issue, the district court rightfully acknowledged that the plaintiffs selected to allow that statute of limitations to run. Now, in raising this argument, I find it interesting that the plaintiffs, by asking this court to now delve into the Pakistani Limitation Act, has now actually to avoid having this court delve into statutes, local ordinances, and statutes, okay? So the court is being asked to do something now, which weighs in favor of my client. But to get to your point, you talked about the Limitations Act, and in the last argument you said, get to the point where it's favorable to you. What hasn't been raised by the appellant is the exceptions to briefed before Judge Titus, and Judge Titus didn't have the ability to go in and read through the Pakistani Act and figure out all these exceptions. I have. There are two. Number one, a party, there is a tolling of a statute of limitations for any party that does not come under the administration of the Pakistani government. Marriott doesn't own this hotel. Marriott doesn't do business in and operated by a Pakistani entity. So Marriott has not operated and done business in Pakistan. The statute of limitations continues to toll as to Marriott until the time they are brought into court there, and Marriott has agreed to be subject to process and to defend themselves in Pakistan. That's the first exception that was never discussed. The second is that there is a is clear what this case is all about. This case is not about Marriott's inadequate security protocols. As a matter of fact, in their complaint, they acknowledge Marriott implemented a crisis management program, conducted training and tabletop exercises, and developed advanced training programs for security personnel in high-risk locations, and indeed established a setback terror barrier at the Islamabad hotel. What their claim is that these protocols were not properly carried out. The night of this horrific event on September 20, 2008, their claim is that there was a failure by Pakistani employees, local security, local government contractors, hotel management. They failed to carry out these protocols, and in doing so... They're not basing their claim on that. They're basing their claim on the fact that Marriott, through its corporate offices, failed to provide the necessary safeguards to protect the people living in the hotel in Pakistan. This case got nothing to do with what the Pakistan official did or did not do. And all due respect, Judge Hamilton, and even in the memorandum by Judge Titus in the complaint, there's a claim for wrongful death, survivorship, and vicarious liability. They set forth a vicarious liability claim. That being that Marriott is vicariously liable for the alleged acts and omissions by people on the ground in Pakistan. Well, I don't think that's... As before us, I'm not sure that's part of the case. The part of the case is whether or not the district court abused its discretion in dismissing this case on the basis of forum non-convenience. That's correct. But part of it is the fact that the underlying context of this case... Well, I'm still waiting for you to tell me how the district court addressed that. That is, they addressed the presumption of convenience in favor of the home forum adopted by the plaintiffs. Yes. On page four of the opinion, Judge Titus states as follows. The court usually gives less deference to a plaintiff that has not chosen to bring the case in its home country. But this lack of deference is mooted. I'll repeat that. This lack of deference is mooted when the defendant is a resident and citizen of the forum he seeks to have declared inconvenient. Marriott was in the forum and they were the ones seeking to declare inconvenient. So any less deference afforded to the plaintiff is mooted. Implicit and inherent in that... I agree with that proposition. The Supreme Court has said in the Sanokim case that a party seeking dismissal on the ground of forum non-convenience bears a heavy burden, as opposed to what you said, in opposing the plaintiff's chosen forum. The moving party bears the burden not only of showing that an adequate alternate forum exists, but also that the balance of private and public interest factors favors dismissal. You're right, Your Honor. And what the plaintiffs are trying to suggest is that a deference level is to be given dispositive effect here. That the deference level is to be given dispositive effect. This court, there is nowhere in this opinion, Your Honor, that suggests that Judge Titus applied any lower level of deference. As a matter of fact, in their briefs, Your Honor, I quote, that their appellant suggests that the opinion implies a lower level. They don't cite anywhere in the record that says a lower level of deference was actually applied. They simply say it implies a lower level, but then offer no support that this implication impacted the court's analysis or created an abuse of discretion. But the problem is you can see that how their normally there's a lesser deference to a plaintiff who chooses the forum, but that's mooted when the defendant actually is in their home territory. That doesn't speak to what Judge Hamilton, when he read the case law, that says this should be a heavy burden. At best, that says it's back to equal, but maybe equal, but it's muted to what level? Not as less as it ordinarily would be? The language of the district court invites that interpretation, doesn't it? Well, I think what it invites is the fact that the court recognizes that deference levels vary. Every forum nonconvenience case that's been decided recognizes that the deference level varies depending on the facts and circumstances. That deference level was then applied to the private and public interest factors. Yes, but when we're looking at the abuse of discretion, we're looking for the district court to recognize that there is a heightened burden on the defendant, moving party, and that there's a deference in favor of the plaintiff. The fact that there is absent that particular language, I do not see allows the court to read in that there's been abuse of discretion. The fact that the court chose to identify when certain deference levels are mooted does not, in my opinion, suggest an abuse of discretion where the trial court has sound discretion in ruling upon a considerable number of factors in determining whether the current venue is convenient. Let me ask you this question. Your opposing counsel didn't cite it. Are you familiar with the case, Guidi, I would call it, G-U-I-D-I? Absolutely, I'm prepared to speak to that. Second Circuit case. It hasn't been followed by any other court since. Second Circuit does apply a three-level analysis, including deference. If you'll let me state my question. Sorry, Your Honor. You can go on. Apologize, Your Honor. I told him, enlighten him if you care to. Why, if we find that case to be persuasive, how is that case different from this case? The Guidi case was in a circuit where the court does consider deference as a dispositive factor. I'm talking about the factors, the factors that it would have been inconvenient and presented danger for the plaintiffs in that and to have to litigate their causes of action over there. Well, I think one of the issues that the court ended up was that the ends of justice will not be served in this case should it be dismissed. Sure. And the Guidi case was one that where the court analyzed that the attacker who had intentionally went and attacked these people was still at bay and was potentially posed a risk to these individuals. But that was, again, one of those factors, Your Honor. How's that different from this case? Well, again, the Guidi standard is different from the Fourth Circuit applies. Tang Court, and I know, Justice, I'm mindful of Justice Gregory being on the Tang panel, this district, Your Honor, has never, ever considered fear as part of the analysis as to whether there is an adequate alternative venue. They have never factored it in. Judge Gregory has never done that. Every other circuit has never done that. We just had following Titus's opinion, the decision in California, the Hardy case, almost online with this case, U.S. citizens killed in Pakistan. The rule in Tang that would be applicable to this case, under the framework which is set forth there, a district court must determine whether the alternate forum is, one, available, two, adequate, and three, more convenient in light of the public and private interests. Yes, Your Honor. The private interests have to do with the fear, if you want to call it that, or I would prefer to say the danger of having to go to a company that has written State Department warnings that American citizens should not go to Pakistan because of the danger of attacks over there. That is what the private interests involved under Tang. In all due respect, I disagree, Your Honor. I've never seen anywhere in... in Tang where they have identified that fear is a controlling factor. I have not identified any other case besides Guidi where they have discussed fear. They have tried to raise it, and again, in the Hardy case in California, that was their main argument, that they were fearful of going to Pakistan, and the court said that fear alone is not an adequate reason. Tang... What case is that you're talking about? The Hardy case. It was cited in our brief, Your Honor. It came out about, I think, a week after Judge Titus's opinion, and that did a on-point public and private interest factors analysis. I have not seen anywhere in the Fourth Circuit, and Judge Titus, again, if I might just cite to his opinion, confirmed, just so... And additionally, Your Honor, if I could, on page 10 of the opinion, Judge Titus direct... handled the Guidi case, and where they found that a fear of violence was dispositive in deciding that an alternative form was inadequate, but it was rather one factor that a court should consider. So the court did recognize the Guidi case there. Instead, it was a factor the court should consider. It was one factor in the Guidi case because it went to a dispositive third prong, which is deference. The Fourth Circuit does not have that. But Judge Titus did recognize here that fear is not part of the Fourth Circuit analysis. If I could just find it for one moment. Nevertheless, the burden of proving an adequate form is low, and the Fourth Circuit has never found that a fear of violence in a foreign country alone creates an inadequate form. So, Judge Titus, obviously, inciting to the Tang case. So, again... Do you have any cases where the Fourth Circuit has rejected fear as a factor to consider? No, I don't. And I believe perhaps that's why he recognized it as a case of first impression, but they have never factored it in or weighed it in. Given my time is close to the end, I will also simply, with respect to the public and private interest factors, I think the district court did a very fair and balanced analysis of all those factors. At times, the court favored the appellant. And at times, the court favored Marion. They certainly focused on the sources of proof. And again, getting back to the point of this case, the court recognized that the appellant was trying to bring to the doorstep of Marion in Maryland a terrorist attack, the worst ever in Pakistan, to be litigated in Maryland when it was clear that all of the critical evidence was going to be on the ground in Pakistan. All of the critical facts, all the facts. This attack was designed to kill the Prime Minister of Pakistan. Fifty-six people died. Thirty of them were hotel people, many of them heroically trying to save the people in the hotel. So 26 people, patrons of the hotel, died. Unfortunately, Mr. DeFederico was one of them. Ninety-six people, or 96 percent of the people, got out of that hotel that night. Clearly, there were protocols in place that worked. Marion would need to develop those. Marion would need to get that evidence. Marion would need to be able to get the facts, the testimony, and the evidence. The district court clearly recognized under one of the public, or rather private factors, that they can't subpoena anyone from Pakistan. The court lacks the subpoena power. And finally, with respect to some of the public interest factors, again, the avoidance of unnecessary problems of conflict of laws. Maryland has the Lex Lokai doctrine. They would have to apply Pakistani law. The Lex Lokai doctrine states that when you have a conflict... I know what Lex Lokai is, but as I understand this case, they're not complaining about what Pakistani officials did or did not do. They're saying that Marriott Hotel had insufficient security plans and procedures and available to protect people living in that Marriott Hotel in Pakistan. It's got nothing to do with Pakistani law. Well, to the extent that that's their claim... They're saying that all those procedures were developed at Marriott's home office in Maryland. Absolutely. Judge Titus recognized that they believe their case can be won or resolved by taking the deposition of one official in Maryland. The deposition of one official in Maryland will get them one thing, a description and confirmation of all the security measures they had in place. Is that Mr. Orloff? Orloff, yeah. The question, Your Honor, is how do you know if those measures were effective? How do you know if they were carried out? How do we know how Mr. DeFederico died? Too much of imagination or too much intelligence to assume that if the place was blown up, that the procedures could possibly have been inadequate. That would be for a jury to determine. And the jury would need to have facts on the ground. The jury would need to have an understanding of was this terror... the barrier, for example. Jury would have to know whether or not they had barriers, concrete barriers blocking people getting into the hotel pursuant to Marriott procedures. What other Marriott procedures were available or put in place to protect the residents of that hotel? Right. And there's no dispute that the barrier was there. Their dispute, again, while they frame it, Your Honor, as, well, we're challenging the protocol, their complaint is grounded upon the following. The hotel security was negligent in addressing the situation. The hotel security was negligent in failing to alert hotel guests, resulting in Mr. DeFederico's death. When they say hotel security, are they referring to the security of security put in force by Marriott Hotels? The Pakistani officials. Marriott officials... That's not the way I read this thing. But Marriott has no one over there. That hasn't been challenged. It hasn't been disputed, Your Honor. Marriott doesn't own it. None of their staff are over there. These are all Pakistani individuals. Marriott managed the hotel. Marriott is a franchised hotel. I understand that. I know they didn't own it, but they managed the hotel. No, they didn't. They had an owner and manager over there. They don't even know managing Marriott. Is there a name alone? I believe I may be over my time. No, you're not. It's still Amber. Okay. But it doesn't mean you have to use it all. I would conclude in this fashion. As the Tang Court has determined and ruled, the forum non-convenes determination is committed to the sound discretion of the trial court. The appellants challenge two levels, the deference challenge and a fear factor. The fear factor, they claim, is one of the purported factors that this court must consider. And because they didn't, it's an abuse of discretion. But the Fourth Circuit has never done that, so I can't see how they can argue that there has been an abuse of discretion. When a court considers all the relevant public and private factors, and there's a fair balancing, this court must give substantial deference to the trial court. And the 20-page opinion by Judge Titus covers every single issue, balances equally between both sides, at times actually says Marriott overstated its argument. I don't believe them. They've overstated it and still did the balancing test appropriately. Thank you. Mr. Hall, before you get started, I want to ask this question to you. As you well know, we're here on abuse of discretion. Yes. So the deference is switched. We defer to the district court's decision unless we can find, on this record, that that discretion was abused. You agree that the law is, in the Piper aircraft, that in all of these cases, in form nonconvenient, quote, the central, not so, but the central focus of the form nonconvenient inquiry is convenience. Certainly, there's a question about fear, and there's another question, I think counsel makes a good point, as well as you do, that fear is a practical factor, but it's certainly not one that this court has recognized positively, has not rejected it, I think as Judge Thacker was questioning, we're not saying it can't be, but it's hard to find abuse of discretion when there's not a clear mandate from this court of precedence to say that that fact is a large one. But it is clear that the central focus must be convenience. My question to you is this, how, in terms of, because this is about litigation, not fairness, not result, who's going to hear it, but litigation, how can we say that abuse of discretion, when you look at all the factors, that likelihood of how this case is going to be tried, witnesses, the number of witnesses, and even though it is a deal of plans, but plans ultimately evolve into implementation because that's how approximate causation is determined, what actually happened that day in part, how is it an abuse of discretion to say in this record that that balance was not met in an abuse of discretion, not that we would have come up with a different result, but that the district was used on the central focus of convenience? I appreciate the question. And we've given you in our brief those cases in which the standard abuse of discretion is found whenever the court misapplies the legal standard applicable in the analysis or fails to conduct the requisite review mandated by law. And because the very first standard, which is the high presumption, the level of vexatiousness to the defendant and the level of harm to the plaintiff being de minimis, that standard, which is repeated throughout the cases, that's the standard and it's not in the judge's decision. He used different language and the departure from that standard makes it an abuse of discretion. The statute of limitations and the failure to address that correctly makes it an abuse of discretion. Let me just talk about the statute of limitations for one small second. Marriott, and this may go to Judge Hamilton's point as well, when one wants to rely upon foreign law, they must provide a notice of intent to rely upon foreign law. That wasn't done. That wasn't done by Marriott. That first came up as an exhibit to the motion. So what I'm saying to you is that in dealing with this case and going through all those issues, we have a trial judge going through an analysis on a flawed legal standard. If you conclude that the standard was flawed and the analysis is flawed, and then there's an abuse of discretion. That is the process that gets us to the conclusion. Judge Hamilton had some questions to opposing counsel regarding control and I'd invite the court to the joint appendix at page 174, in which Marriott describes its own control over this process. This is not an abstract statement. It says all of this effort is directed out of Marriott's corporate security offices. Instead of requiring general managers to make risk assessments and implement appropriate countermeasures without support, Marriott provided professional analysis and direction. Marriott's training program produced security awareness, et cetera. It's all about Marriott doing what it did and it did that in Maryland. Is that primarily related to the testimony of Mr. Orlob? That is, this is a, it's not only the testimony of Mr. Orlob, but it is a written statement made by Marriott that was provided, I believe, to, in a magazine, an article he wrote. Guardian. Yeah, he wrote that article, yes, sir. And he also testified before the United States Senate. Yes, he did. Involving that. Yes, he did. But in this case, Marriott's potential defense, would it be involved that, for example, just hypothetically, I don't know about the math, we had a sterling plan of security, but it wasn't implemented properly in Pakistan. They could theoretically do that. And who would those witnesses be? Those would be the third-party auditors that Marriott hires to review corporately, that, again, is referred to by Mr. Orlob, that there are third-party auditors. So nobody, no boots on the ground would be involved in that? It doesn't look like it. How could it not be? They said- Wait a minute, wait, wait, wait. That's just common sense. I have a plan of security laid out perfectly, for example. But human beings have to do it. You mean to tell me it's irrelevant whether or not on that day that I had 10 people who were supposed to be there in front of the guard, and in fact, that day, there were one person there. No, wait, let me finish. One person there. That's a hypothetical. You're saying that witnesses of that day that said, oh, yeah, the guy who was the head guy, he came in late, and they decided only to staff with one. That wouldn't be a part of Marriott's defense, that, yeah, our protocol says 10. The amount of that day said one is enough. I actually think we never get there. Oh, how do you never get there? And the reason we never get there is because Marriott's planning documents and administration, if it proves that they did what they were supposed to do in terms of having a protocol that dealt with the anticipation of the fire and the effect of the aftermath of a bomb, then they did what they were supposed to do. From a planning standpoint, case is over. Marriott, in other words, this is not a question that Marriott will say, we did a great job, they did a bad job. If they did a great job, that's all the case is over. We're not seeking any claim that they're vicarious liability for what the people that day in the hotel did or didn't do. Rather, did the plan tell them what they should do or not? Did the plan misspeak when he said that you... Yes, he did. Yes, he did. Let me ask you this. To the extent, as Judge Gregg has alluded, to the extent that testimony from people in Pakistan would be available and the plaintiffs have chosen the forum in the United States, if those Pakistani people are not subject to deposition and so forth, that would go to the merits of their case. It wouldn't go to the convenience of the forum. That's right. I would think so. I mean, let me just go back to one other thing. I think that whenever we have litigation that involves an event, multinational event, because that's really what we're talking about. There's a large piece of it that occurs here, there's a large piece that is there. We have this type of issue and this is why the... But counsel, when he relied upon Tang in his argument, neglected to remember the very start of the argument in Tang was these were Chinese nationals suing in Maryland. So they weren't entitled to the same presumption, the same standard that Americans suing in their home court are entitled to. So we depart there. The court will look to Guido and they talked about Guido. We cited Guido both to Judge Titus and in our brief here. And Guido recognizes a real proposition. Counsel argued, well, it dealt with a lone gunman, but I'd invite you to put note 22 of the brief where counsel, where the defendant in that case noted that the, rather plaintiff noted that the gunman had been arrested and was apprehended, been sentenced to death. So he, the gunman himself wasn't the threat. It was rather the violence in the region that was a threat. In any event, the court was very kind. I see I'm being told to stop. Thank you very much. Thank you very much.
judges: Roger L. Gregory, Stephanie D. Thacker, Clyde H. Hamilton